IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIM. NO. 03-00560 SOM (04) |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER REGARDING CALCULATION** |
| vs. | ) | **OF MAXIMUM PRISON TIME THAT** |
| | ) | **COULD BE IMPOSED** |
| WALLACE SHIMABUKURO, JR. | ) | |
| (04), | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER REGARDING CALCULATION OF
MAXIMUM PRISON TIME THAT COULD BE IMPOSED**

**I.      INTRODUCTION.**

Does time spent in intermittent confinement in prison as a condition of a defendant's supervised release need to be subtracted from the prison time available by statute on a later revocation of supervised release in the same case?  In an oral ruling, this court determined that intermittent confinement in prison does not count against the prison sentence that may be imposed on a later revocation.  This court went on to sentence the defendant to the maximum time permitted by statute after prior revocation prison periods (but not intermittent confinement) had been taken into account.  This written order is consistent with the court's oral ruling.

**II.       FACTUAL BACKGROUND.**

Defendant Wallace Shimabukuro pled guilty in 2004 to a drug conspiracy count. This court sentenced him in 2005 to 121 months in custody and 5 years of supervised release. In 2006, the court granted the Government's motion for a reduction in sentence under Rule 35(b) of the Federal Rules of Criminal Procedure and reduced his sentence to 78 months in custody and 5 years of supervised release. No appeal was filed.

Shimabukuro began his first term of supervised release on February 2, 2009. Supervised release was revoked in 2013. Among other violations, Shimabukuro had lied in seeking permission to travel out of the District of Hawaii, allegedly in connection with his work for his wife's business. Given his representations, the Probation Officer and the Assistant United States Attorney had agreed that the court should authorize the travel, and the court had indeed authorized travel on multiple occasions. Shimabukuro was actually traveling to gamble, something Hawaii law did not permit him to do within the District of Hawaii. This court imposed a sentence of 18 months in custody and 42 months of supervised release. That custody period was in excess of the advisory sentencing guideline range. On Shimabukuro's appeal of the above-guideline sentence, the Ninth Circuit affirmed.

Shimabukuro's second supervised release term following his 18-month revocation prison sentence began on December 12, 2014. His second supervised release term was revoked on July 21, 2015, following proceedings in which he was represented by the First Assistant Federal Public Defender. *See* ECF No. 668. Shimabukuro's violations included unauthorized travel. Notably, he was found to be in possession of a significant amount of jewelry that was inconsistent with his earnings as a cab driver with his mother's company. The court expressed concern that Shimabukuro's continuing lack of candor was subverting attempts by the Probation Office to supervise him. The court once again revoked supervised release and imposed a sentence of time served and 41 months of supervised release.

As a condition of his new term of supervised release, the court required Shimabukuro to serve 150 days of intermittent confinement at the Federal Detention Center in Honolulu. The 150 days were broken up into 50 consecutive weekends beginning on Friday evenings and ending on Sunday afternoons. The court's intent was to curtail the time Shimabukuro had to engage in unauthorized activities, while giving the Probation Office an opportunity to supervise Shimabukuro based on what was really going on in his life, not on misrepresentations. The total period of intermittent confinement was considerably less than the court would otherwise have sentenced Shimabukuro to had it

imposed an uninterrupted period in custody.  The maximum uninterrupted custody period that could have been imposed was 18 months, because, under 18 U.S.C. § 3583(e)(3), the aggregate of revocation custody periods could not exceed 36 months, and Shimabukuro had been sentenced to 18 months on his prior revocation.  In fact, Shimabukuro at the time was not objecting to being "maxed out" with a second 18-month sentence and no further supervised release.  Intermittent confinement as a condition of supervised release allowed the court to fashion a sentence that gave Shimabukuro considerable freedom and allowed him to maintain his relationship with, among others, his daughter.

This court was cognizant that, under the versions of applicable statutes in effect at the time of the second revocation, intermittent confinement could be imposed only as a modification of earlier supervised release conditions, not if the court actually revoked supervised release.  This statutory restriction took effect on October 13, 2008, as part of the Judicial Administrative and Technical Amendments Act of 2008.  *See* 18 U.S.C. § 3583(d) (stating that intermittent confinement, as set forth in 18 U.S.C. § 3563(b)(10), may be imposed as condition of supervised release only in accordance with 18 U.S.C. § 3583(e)(2), which governs modification, not revocation, of supervised release).

4

This court nevertheless concluded that intermittent confinement could be imposed as a supervised release condition during the first year of the second revocation sentence because Shimabukuro had committed his underlying drug offense before October 13, 2008.  Before the 2008 amendment, intermittent confinement could be imposed even on a revocation.  *See* 18 U.S.C. § 3583(d) (2000 and 2006) ("The court may order, as a further condition of supervision . . . any condition set forth as a discretionary condition of probation in § 3563(b)(1) through (b)(10) and (b)(12) through (b)(20), and any other condition it considers to be appropriate.").  The availability of intermittent confinement was beneficial to Shimabukuro, and a statutory amendment making that favorable option unavailable might have run afoul of the prohibition on the ex post facto imposition of a penalty.  *See United States v. Paskow*, 11 F.3d 873 (9th Cir. 1993)(stating that Ex Post Facto Clause violated "when an amendment to the supervised release statute disadvantages a defendant who committed the underlying offense before the amendment became effective--even if, as here, the defendant committed the act that led to revocation of his supervised release after the amendment was adopted").  While the ex post facto issue was not expressly raised during proceedings on the second revocation, 150 days of intermittent confinement was

5

obviously considerably less than periods of straight prison time being discussed.

The court also required Shimabukuro to obtain employment and to perform community service until he obtained full-time employment. The court imposed the following restriction on employment:

> The defendant shall not work for any business owned (in whole or in part) or managed by any family member. He may not have a family connection or close personal friendship with the hiring party, his supervisor, or the owner of the business he works for or with. Employment shall be obtained through an arm's-length transaction, not based on a close pre-existing personal connection. Any job must be approved in advance by the Probation Office.

In restricting the kind of job Shimabukuro could obtain, the court was concerned that his mother appeared to have assisted him in lying to the Probation Office. The court wanted to prevent Shimabukuro from getting others close to him to perform the same function.

Shimabukuro did not appeal his second revocation sentence and completed his 50 weekends of intermittent confinement.

Still on supervised release even after completing intermittent confinement, Shimabukuro came before this court in 2017 for his third revocation proceeding. It is this third revocation that the present order addresses. Because he declined

to sign a financial affidavit establishing that he was indigent, this court declined to appoint counsel for Shimabukuro, as discussed in a separate order filed contemporaneously with the present order.  Although he had had counsel in all prior proceedings in this case, he represented himself on his third revocation.

Among the violations Shimabukuro admitted to was having misrepresented his employment.  He had obtained employment at a friend's business in violation of the requirement that he obtain employment through an arm's-length transaction.  At some point, he ceased to work for that friend's business and persuaded his friend to falsely tell the Probation Officer that Shimabukuro continued to be employed by that business.  In reality, Shimabukuro was once again doing extensive work for his mother's business.  He was engaging in construction projects and appeared to have been pawning jewelry and dealing in collectible stamps and coins.  The court revoked supervised release and sentenced Shimabukuro to 17 months in custody with no further supervised release.

During sentencing proceedings, Shimabukuro, representing himself, argued that the statutory maximum sentence available was less than 17 months.  This court explained that it was subtracting from the 36-month statutory maximum the 18 months imposed on the first revocation plus an additional month

7

representing the days included in the "time served" sentence imposed on the second revocation.  Shimabukuro took the position that the court should also subtract the 150 days he had served in the form of intermittent confinement on the second revocation. This court disagreed, noting that the intermittent confinement was a condition of supervised release and so did not count against the available statutory maximum.

The 17-month prison term that this court imposed is greater than the sentencing guideline range of 4 to 10 months. In addressing the sentence, this court held a lengthy discussion that included this court's recognition that (1) Shimabukuro had engaged in a complicated deception, (2) the deception had continued over time rather than being a brief act of opportunism, (3) lying to a Probation Officer is a particularly egregious act that undermines the purpose of supervision, and (4) Shimabukuro's first revocation sentence of 18 months had apparently not left a sufficient impression on Shimabukuro.

### III.     ANALYSIS.

The court has not found a Ninth Circuit case directly addressing the issue of whether intermittent confinement spent in prison affects the prison time that may be imposed upon a later revocation of supervised release.  This court is instead relying on other authorities that this court reads as providing for the sentence this court imposed.  In terms of case authorities, what

8

the court has found are cases involving community confinement (halfway houses) or community treatment, and home detention.

The version of 18 U.S.C. § 3583(d) in effect at the time Shimabukuro committed his underlying drug offense and at the time of sentencing provided: "The court may order, as a further condition of supervised release . . . any condition set forth as a discretionary condition of probation in section 3563(b)(1) through (b)(10) and (b)(12) through (b)(20), and any other condition it considers to be appropriate." Intermittent confinement was and remains among the discretionary conditions permitted.

Since 1984, custody time credit has been controlled by 18 U.S.C. § 3585, which states,

> (a) Commencement of sentence.--A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
>
> (b) Credit for prior custody.--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences–
>
>     (1) as a result of the offense for which the sentence was imposed; or
>
>     (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

9

that has not been credited against another sentence.

In *Reno v. Koray*, 515 U.S. 50, 52 (1995), the Supreme Court examined the issue of prior custody credit under 18 U.S.C. § 3585(b), holding that a pretrial defendant released on bail but confined to a community treatment center was not in "official detention" such that the defendant was entitled to credit for that confinement against a sentence. In reaching that holding, the Supreme Court noted that "official detention" was defined in reference to the Bail Reform Act of 1984, 18 U.S.C. § 3142, which afforded a federal court only two options at a pretrial detention hearing: (1) to "release" the defendant on bail; or (2) to "detain" the defendant. *Id.* at 57. As a result, the Supreme Court concluded that "a defendant suffers 'detention' only when committed to the custody of the Attorney General; a defendant admitted to bail on restrictive conditions . . . is 'released.'" *Id.*

In *Koray*, the Supreme Court acknowledged that a defendant who is released to a treatment center might be subject to restraints that are not materially different from those imposed on "detained" defendants in the custody of the Attorney General. However, the Supreme Court noted that there is always a distinction between "released" and "detained" defendants, stating, "Unlike defendants 'released' on bail, defendants who

10

are 'detained' or 'sentenced' always remain subject to the control of the Bureau." 515 U.S. at 63.

> This is an important distinction, as the identity of the custodian has both legal and practical significance. A defendant who is "released" is not in BOP's custody, and he cannot be summarily reassigned to a different place of confinement unless a judicial officer revokes his release, see 18 U.S.C. § 3148(b), or modifies the conditions of his release, *see* § 3142(c)(3). A defendant who is "detained," however, is completely subject to BOP's control. And "[t]hat single factor encompasses a wide variety of restrictions."

*Id.*

In *Tanner v. Sivley*, 76 F.3d 302, 303-04 (9th Cir 1996), the Ninth Circuit applied *Koray* to determine that a defendant's time spent at a community treatment center as a condition of probation before probation was revoked (and the defendant was sentenced to 5 years of imprisonment) was not "official detention" for purposes of § 3585. While neither *Koray* nor *Sivley* involved confinement in a prison, the reasoning appears applicable here.

In *United States v. Horek*, 137 F.3d 1226, 1229 (10th Cir. 1998), the Tenth Circuit similarly rejected a claim that time spent in community confinement was creditable to a sentence. Section 7B1.5(a) of the sentencing guidelines provided, "Upon revocation of probation, no credit shall be given (toward any sentence of imprisonment imposed) for any portion of the term of

11

probation served prior to revocation." Horek nevertheless argued that he should receive credit for 4 months spent in community confinement against the sentence for his original offense. The Tenth Circuit rejected Horek's argument, noting that, under the sentencing guidelines, "community confinement, as a condition of probation, is not 'imprisonment' within the meaning of the Guidelines and, therefore, should not be credited against either the sentence imposed on revocation of probation or the maximum guideline term." *Id.* The Tenth Circuit ruled,

> While the district court could have initially imposed a sentence of imprisonment, it granted Horek the benefit of the doubt and imposed probation with the condition that Horek spend four months in community confinement. Having violated his probation, Horek does not now receive credit against the maximum guideline term of imprisonment for the time that he served in community confinement. The nine-month sentence of imprisonment is therefore legal.

*Id.* at 1230–31.

A defendant like Shimabukuro who is sentenced to a term of intermittent confinement for breaching conditions of supervised release remains under the control of the sentencing judge, not the Bureau of Prisons. *See* 18 U.S.C. § 3583(c)(2)(stating that a court "may modify, reduce, or enlarge the conditions of supervised release at any time prior to the expiration or termination of the term of supervised release"). Thus, Shimabukuro's intermittent confinement condition could have

12

been changed, and the modification could have included ending intermittent confinement early. Because Shimabukuro's intermittent confinement was a condition of supervised release subject to modification, not a prison sentence, it never amounted to official detention." Intermittent confinement in this case under this judge's supervision allowed Shimabukuro to be at considerable liberty for most of each week. That liberty and the judge's continued discretion regarding it are inconsistent with "official detention."[1]

The unworkable nature of giving Shimabukuro credit for intermittent confinement is highlighted when one recognizes that intermittent confinement and home detention are both discretionary conditions that are given equivalent treatment in applicable statutory provisions. Under 18 U.S.C. § 3853, supervised release conditions track, for the most part, probation conditions that may be imposed under 18 U.S.C. § 3563.

---

[1] In response to *Koray*, the Bureau of Prisons has made it clear that it does not consider a defendant entitled to "any time credit off the subsequent sentence, regardless of the severity or degree of restrictions, if such release was a condition of bond or release on own recognizance, or as a condition of parole, probation, or supervised release." Bureau of Prison Program Statement 5880.28. The BOP counts only "official detention," which it defines as "time spent under a federal detention order," *id.*, when it determines a projected release date, which may affect what programs are made available to an incarcerated defendant. That determination is certainly not the same in substance or purpose as a court's determination of the statutory limit on a sentence. However, this court notes that its understanding of the limit applicable to Shimabukuro's sentence appears entirely consistent with the BOP's position on this subject.

Therefore, probation conditions are directly relevant to the present analysis of supervised release conditions. A court has as much discretion to order intermittent confinement as a probation condition as a court has to order home detention. *See* 18 U.S.C. § 3563(b)(10) (regarding intermittent confinement) *and* § 3563(b)(19) (regarding remaining at residence during nonworking hours). If the court were to give credit for intermittent confinement under § 3563(b)(10), it would make no sense to treat home detention under § 3563(b)(19) differently. *See generally United States v. Phipps*, 68 F.3d 159, 162 (7th Cir. 1995) (noting that home detention is not "imprisonment" under guidelines); *see also United States v. Hungate*, 138 Fed. Appx. 853, 854-55 (8th Cir. 2005) (citing U.S.S.G. § 7B1.5(b) for proposition that "Credit for time already served need not be credited in the new sentence . . . regardless of whether it was served as home confinement or in treatment."); *United States v. Jorden*, 734 F. Supp. 687, 688 (E.D. Pa. 1990) (stating that, under sentencing guidelines, residence at community treatment center not incarceration).

The sentencing guidelines also shed some light on this issue. They treat intermittent confinement, community confinement, and home detention all as substitutes for imprisonment. *See* U.S.S.G. § 5C1.1. A substitute for imprisonment cannot itself be actual imprisonment. Thus, a

14

probation sentence that includes intermittent confinement, community confinement, or home detention is not a prison sentence. Treating any of those conditions as involving "official detention" would negate the very essence of a probation sentence. The same is true when intermittent confinement is a condition of supervised release rather than of probation. A defendant who is released under court supervision is not simultaneously officially detained.

The court recognizes that, in *Zavala v. Ives*, 785 F.3d 367, 368-69 (9th Cir. 2015), the Ninth Circuit held that, when the United States Immigration and Customs Enforcement Service ("ICE") detains an alien pending potential criminal prosecution, that detention constitutes "official detention" within the meaning of § 3585(b) such that the alien is entitled to credit toward his criminal sentence. In so holding, the Ninth Circuit distinguished *Koray* on the ground that Koray was "released" from official detention to a private facility, whereas an alien subject to ICE detention is always detained and never released. *Id.* at 373. While Shimabukuro's intermittent confinement was not at a private facility, *Zavala* is distinguishable from the present case. Intermittent confinement, even when spent at a BOP facility, is a condition of supervised release that can only be ordered when a defendant is "released," not subject to "official

15

detention" by the Bureau of Prisons. Shimabukuro's intermittent confinement was part of his supervision by this court.

Having had the advantage of intermittent confinement on his second revocation, Shimabukuro now complains about the perceived disadvantage of not having his 150 days of intermittent confinement in prison taken into account on his third revocation. But it bears noting that this is a disadvantage that flows from his new violations of supervised release conditions. If Shimabukuro had made good use of the liberty afforded him through intermittent confinement, no third revocation would have occurred. Most defendants with intermittent confinement do use that liberty wisely. Shimabukuro is not among that group. The advantage conferred on him earlier cannot now be returned by him, and that he gets no credit is actually the result of his own misconduct.

*Koray* and its progeny, together with statutory and sentencing guideline language, support this court's decision. Intermittent confinement does not count as "official detention" that affects the statutory maximum.

**IV.     CONCLUSION.**

The 150 days of intermittent confinement Shimabukuro served pursuant to the second supervised release revocation does not count against the 36-month statutory maximum period of incarceration.

16

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, July 17, 2017.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*U.S. v. Shimabukuro*, Crim. No. 03 00560 SOM (4); ORDER REGARDING CALCULATION OF MAXIMUM PRISON TIME THAT COULD BE IMPOSED

17